UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BROWN J. MIDDLETON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:10CV74 CDP |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying Brown J. Middleton's application for

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §

401, *et seq.* Claimant Middleton brings this action asserting physical disability

because of chronic obstructive pulmonary disease, morbid obesity, sleep apnea,

diabetes mellitus, arteriosclerotic heart disease, status post coronary artery bypass

grafting, Grave's disease, and hypertension. The Administrative Law Judge

concluded that Middleton was not disabled. Because I find that the decision

denying benefits was supported by substantial evidence, I will affirm the decision.

*Procedural History*

On June 25, 2006, Brown J. Middleton filed for Period of Disability and

Disability Insurance Benefits.  The Social Security Administration denied the claim, and a timely hearing request was filed.  Middleton then appeared and testified at a hearing held on November 8, 2007.  The Administrative Law Judge issued an opinion on June 25, 2008, upholding the denial of benefits.  On March 5, 2010, the Appeals Council for the Social Security Administration denied Middleton's request for review.  The ALJ's determination thus stands as the final determination of the Commissioner.  Middleton filed this appeal on May 3, 2010.

### *Claimant's Testimony Before the ALJ*

At the hearing before the ALJ, Middleton testified that he was 66 years of age, 5'8 ½" tall, and 411 pounds.  He has a Bachelor's degree in general studies.  He is married and lives in a house with his wife.  Following his honorable discharge from the Air Force in 1965, Middleton worked for over 30 years at a trucking company.  He last worked in December of 1999.  Middleton testified that he took early Social Security retirement benefits beginning in 2004.  He testified to receiving income from a trucking business he owned with his sons, from rental properties he owned with a friend, from rental properties he owned with his sons, and from a condo he owned in Florida.

Middleton testified that he had recently been to Florida with his wife to check on their condo.  He said he does not do any maintenance on the rental

properties he owns.  He also testified to owning a house at Kentucky Lake that he and his wife visit about once a month.  Middleton denied performing any work on this house recently, contrary to evidence in medical records discussed below.

Middleton alleged disability since September 18, 2003.  Specifically, he alleged disability as a result of chronic obstructive pulmonary disease, obesity, sleep apnea, diabetes mellitus, arteriosclerotic heart disease, status post coronary artery bypass grafting, Graves' disease, and hypertension.  He alleged a lack of alertness due to the medication he was taking for, among other ailments, vertigo. He further alleged that his weight, and the pain it caused him, prevented him from getting up and moving around to speak to his employees, as was required at his previous job.  He also testified to having pain in his feet, knees, and back.  He said he could shower, but could not take a tub bath.  He testified to being able to walk 40-50 feet before needing to take a break.  He said he could stand for about five minutes before needing to sit down, and that his wife had to tie his shoes for him. He also testified that the steering wheel of his truck rubbed against his stomach. Middleton stated that he used a CPAP machine to help with his sleep apnea, and that he wore hearing aids to cope with his loss of hearing.

At the time of the hearing, Middleton said he was going to the VA hospital every six months for check-ups.  He said he was looking into have lap band

surgery due to his weight.

*Medical Evidence Before the ALJ*

On November 25, 2003, Middleton underwent a persantine cardiolite stress

test at Southeast Missouri Hospital. Allen L. Spitler, M.D., noted that Middleton

showed a normal sinus rhythm with minor T-wave flattening and standard

persantine infusion.  Dr. Spitler reported that the stress test was uneventful.  At a

follow-up appointment on December 9, 2003, Middleton reported no chest pain to

Dr. Spitler.  Dr. Spitler described Middleton as a businessman who spends time

working on his condo in Florida.  He also noted that Middleton smoked a pack of

cigarettes a day.

On December 16, 2003, Middleton was admitted to the emergency room at

Southeast for a rash and shortness of breath.  Upon arriving at the hospital,

Middleton said he felt good, was not experiencing discomfort, and no longer felt

shortness of breath.  Cynthia M. Bleichroth, M.D., reported that he had been

working on his house at Kentucky Lake, including doing some sanding,

woodworking, and painting.  Middleton said on this day he felt no abdominal pain.

Dr. Bleichroth, in her emergency room note, described Middleton as awake and

alert, having clear lungs, regular heart rate, and having no tenderness in his

abdomen.  On December 17, 2003, Shantilal Karavadia, M.D., described

Middleton as "very active" and noted that Middleton wanted to lose weight.

On a visit to the Poplar Bluff VA Medical Center on June 23, 2004, Middleton reported experiencing no pain. He also denied using tobacco at that time, stating that he last used tobacco more than a year before the appointment. Dr. Karavadia again examined Middleton, and described him as alert and oriented with clear bilateral breathing, and a soft, nontender abdomen. Dr. Karavadia advised Middleton to exercise regularly to help control his weight. On January 26, 2005, Middleton again reported no pain. At this visit, it is noted that Middleton described himself as a lifetime non-smoker or non-user of tobacco products.

On February 17, 2005, Middleton saw Joe M. Chehade, M.D., after he gained over 30 pounds. He reported chronic back pain, but no chest pain, to Dr. Chehade. Dr. Chehade also noted Middleton had positive low energy due to getting out of breath easily. Middleton's blood pressure was 150/94 on this date. After Dr. Chehade changed Middleton's blood pressure medication, his blood pressure dropped to 130/84 on March 31, 2005. Middleton had also lost 20 pounds between his February 17th and March 31st visits.

On July 20, 2005, at the VA Medical Center, Middleton  reported experiencing no pain. Dr. Karavadia noted that Middleton was alert and oriented and showed stable vital signs, On October 18, 2005, in an addendum to the July

20th report, Dr. Karavadia reported that Middleton had an elevated blood pressure, and she adjusted his prescriptions to deal with this issue.

In March, 2004, Middleton was issued a CPAP unit to wear at night, as was recommended by a sleep study.  In May, 2005, Middleton underwent an audiological evaluation and was fitted for hearing aids at the VA Medical Center.

*Vocational Evidence Before the ALJ*

Gary Weinholt, a vocational expert ("VE"), testified before the ALJ, describing Middleton's past work as that of a general manager/owner with duties of paperwork, checking inventory, supervising employees, and meeting with sales managers and team leaders.  He classified Middleton's work as an overall manager of sales.  He testified that this was a skilled and sedentary occupation, as it required sitting for roughly six hours and walking around for about two hours per work day.  He said Middleton had the required experience and education for this occupation.

The ALJ then asked the VE to assume some hypothetical situations for an individual with Middleton's education, training, and work experience.  In the first hypothetical, the VE was also asked to assume the individual could not lift and carry over 10 pounds; had to avoid concentrated exposure to heat, cold, fumes, dust, gases, and smoke; would need to stand for up to five minutes after 30

- 6 -

minutes of sitting; and would need to rest after walking 25 yards.  The VE concluded this individual could not perform Middleton's past work, but would have skills transferable to office manager or customer service manager jobs with little to no vocational adjustment.  The VE concluded that there were approximately 5,000 of these types of jobs in the state economy, and approximately 10,000 lesser skilled jobs that the individual could perform.

The second hypothetical required assuming that the individual could not lift/carry more than 10 pounds; could stand and walk two out of eight hours; could sit for about six out of eight hours; could endure less than occasional stooping, crouching, and climbing; and must avoid concentrated exposure to dust, smoke, gas, and fumes.  The VE again concluded that such an individual could perform the job of an office manager or customer service manager.

The third hypothetical was the same as the second, but the ALJ added that the individual could not sustain attention and concentration for more than two hours at a time, could not work at unprotected heights, and could not be exposed to hazardous machinery.  The VE concluded that jobs such as those being discussed would not be available for this individual because of the individual's inability to sustain attention and concentration.

*Legal Standard*

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 2542 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, *id.*, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1)     the credibility findings made by the Administrative Law Judge;

(2)     the education, background, work history, and age of the claimant;

(3)     the medical evidence from treating and consulting physicians;

(4)     the plaintiff's subjective complaints relating to exertional and
         non-exertional impairments;

(5)     any corroboration by third parties of the plaintiff's
         impairments; and

(6)     the testimony of vocational experts when required which is
         based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th

Cir. 1980).

Disability is defined in the social security regulations as the inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months.  § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R.

404.1505(a); 20 C.F.R. 416.905(a).  In determining whether a claimant is disabled,

the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in

substantial gainful activity.  If the claimant is engaging in substantial gainful

activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment

which significantly limits the claimant's physical or mental ability to do basic

work activities.  If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates

whether the impairment meets or exceeds a listed impairment found in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  If the impairment satisfies a listing in Appendix

1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current

work activity or medical facts alone, and the claimant has a severe impairment, the

Commissioner reviews whether the claimant can perform his past relevant work.

If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner

must evaluate whether the claimant can perform other work in the national

economy.  If not, the Commissioner declares the claimant disabled.  § 20 C.F.R.

404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is

never free to ignore the subjective testimony of the plaintiff, even if it is

uncorroborated by objective medical evidence.  *Basinger v. Heckler*, 725 F.2d

1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole.  *See,*

*e.g., Battles v. Sullivan*, 992 F.2d 657, 660 (8th Cir. 1990).  In considering the

subjective complaints, the ALJ is required to consider the factors set out by

*Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and
> treating and examining physicians relating to such matters as: (1) the
> objective medical evidence; (2) the subjective evidence of the
> duration, frequency, and intensity of plaintiff's pain; (3) any
> precipitating or aggravating factors; (4) the claimant's daily activities;
> (5) the dosage, effectiveness and side effects of any medication; and
> (6) the claimant's functional restrictions.

*Id*. at 1322.

### The ALJ's Findings

The ALJ found that Middleton was not disabled within the meaning of the

Social Security Act from September 18, 2003, through the date Middleton was last

insured.  He issued the following specific findings:

> 1. The claimant met the insured status required of the Social Security
> Act through December 31, 2005.
>
> 2. The claimant had not engaged in substantial gainful activity during
> the period from his alleged onset date of September 18, 2003 through
> his date last insured.
>
> 3. Through the date last insured, the claimant had the following
> severe impairments: chronic obstructive pulmonary disease, obesity,
> sleep apnea, diabetes mellitus, arteriosclerotic heart disease, status
> post coronary artery bypass grafting, Graves' disease, and
> hypertension.

- 11 -

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to work except for work that involved lifting and carrying more than 10 pounds. The claimant could stand/walk for two out of eight hours and sit for six out of eight hours; he could stoop, crouch, or climb on a less than occasional basis; and he had to avoid concentrated exposure to dust, smoke, gas, and fumes.

6. Through the date last insured, claimant was unable to perform past relevant work as a general manager/owner of a trucking sales company.

7. The claimant was 64 years old on the date last insured, which is defined as a person of closely approaching retirement age.

8. The claimant had at least a high school education and was able to communicate in English.

9. The claimant had transferable skills to the residual functional capacity being found therein which entailed little or no vocational adjustment.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

The ALJ doubted the credibility of Middleton's testimony regarding the

intensity, persistence, and limiting effects of his symptoms to the extent the

testimony was inconsistent with the medical evidence and the residual functional

capacity determination.  The ALJ found that Middleton was not precluded from

working by any of his diagnosed ailments, or the combination thereof.  The ALJ

noted that many of Middleton's ailments were able to be controlled by medication.

He also noted that Middleton's claims of back pain were not supported by medical

evidence regarding a back impairment.  The ALJ also noted that none of

Middleton's treating or examining physicians had indicated the claimant was

disabled or unable to work.  Finally, the ALJ noted discrepancies in the record

undermining the claimant's credibility.

## Discussion

As previously mentioned, when ruling on a denial of Social Security

benefits, a court must determine whether there is substantial evidence on the

record as a whole to support the ALJ's decision.  42 U.S.C. § 405(g).  Substantial

evidence is less than a preponderance, but enough that a reasonable mind might

accept as adequate to support the Commissioner's conclusion.  *Juszczyk v. Astrue*,

542 F.3d 626, 631 (8th Cir. 2008).  Additionally, review of a Commissioner's

decision is deferential.  *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).

Because I find that the decision denying benefits was supported by substantial

evidence, I will affirm the decision.

Middleton first argues that the ALJ failed to consider the cumulative effects

of all of Middleton's ailments in determining that Middleton was not disabled.
The Commissioner must consider the combined effect of a claimant's impairments
at step two of the sequential evaluation. *See* 20 C.F.R. § 404.1520. The 8th
Circuit has held that an ALJ properly considers the combined effect of a
claimant's impairments when he separately discusses a claimant's impairments,
complaints of pain, and daily level of activities, and makes a finding based
thereon. *See Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) ("To require
a more elaborate articulation of the ALJ's thought processes would not be
reasonable." *quoting Gooch v. Secretary of H.H.S.*, 833 F.2d 589, 592 (6th Cir.
1987), *cert. denied*, 484 U.S. 1075 (1988)).

In the instant case, the ALJ properly considered the combined effect of
Middleton's alleged impairments in rendering his decision. In determining the
severity of the claimant's impairments, the ALJ found that Middleton had severe
impairments of chronic obstructive pulmonary disease, obesity, sleep apnea,
diabetes mellitus, arteriosclerotic heart disease, status post coronary artery bypass
grafting, Graves' disease, and hypertension. The ALJ then noted that the medical
record was devoid of objective medical evidence to support Middleton's claims of
a disabling back impairment. The ALJ also noted evidence in the record that
Middleton remained active and spent time working on his house at Kentucky Lake

and his condo in Florida.  After considering the medical evidence and testimony,

the ALJ found that Middleton's impairments, while severe, did not render him

disabled as defined by the Social Security Act.  Because the ALJ separately

discussed each of Middleton's impairments, his level of activity, and his

complaints of pain, the ALJ properly considered the combined effect of

Middleton's alleged impairments.  *Browning*, 958 F.2d at 821; *see also Hajek v.*

*Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (conclusory statement that ALJ did not

consider combined effects of impairments was unfounded where ALJ took note of

each of plaintiff's impairments and found that the evidence "as a whole" did not

show plaintiff was prevented from working).

Middleton also claims that the ALJ failed to give proper weight and

consideration to his testimony.  "The credibility of a claimant's subjective

testimony is primarily for the ALJ to decide, not the courts."  *Baldwin v. Barnhart*,

349 F.3d 549, 558 (8th Cir. 2003).  When evaluating a claimant's subjective

complaints, the ALJ must consider the objective medical evidence, a claimant's

daily activities, the duration, frequency, and intensity of pain, the dosage and

effectiveness of medication, any precipitating or aggravating factors, and any

functional restrictions.  *Id.*; *see also Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th

Cir. 1984).  The ALJ may discount a claimant's subjective complaints if there are

inconsistencies in the record, as a whole.  *Baldwin*, 349 F.3d at 558.

Here, the ALJ assessed Middleton's testimony concerning these factors and determined that his testimony lacked credibility, to the extent it was inconsistent with the residual functional capacity assessment.  In making this assessment, the ALJ took note of substantial evidence in the record refuting Middleton's claims of disability.  The ALJ discussed Dr. Chehade's notation of Middleton's improved blood pressure readings.  Furthermore, the ALJ noted that the medical evidence showed that Middleton's impairments were controlled with medication and treatment.  The ALJ also recognized that none of Middleton's treating or examining physicians had indicated that the claimant was disabled or unable to work.  Particularly, the ALJ discussed a VA Medical Center report from 2003 describing Middleton as "very active." and a Southeast Missouri Hospital record stating that Middleton spent time "working on a condo" in Florida.  The ALJ found this evidence inconsistent with Middleton's claims of total disability.

Furthermore, the ALJ discounted Middleton's credibility due to evidence in the record contradicting some of his claims.  While Middleton testified that he stopped smoking 20 to 25 years ago, Dr. Spitler stated in 2003 that Middleton smoked a pack of cigarettes a day.  Also, Middleton testified that his neighbor worked on his house at Kentucky Lake.  This is contradicted by a 2003 medical

record indicating that Middleton was sanding, painting, and doing woodworking

on this house.  These inconsistencies support the ALJ's decision to discount

Middleton's subjective testimony.

Finally, Middleton argues that the ALJ's decision is not supported by

substantial evidence.  Once it is determined, as it was here, that the claimant

cannot perform past relevant work, the burden shifts to the Commissioner to show

that the claimant can perform other work as it exists in the national economy.

*Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).  Testimony from a vocational

expert constitutes substantial evidence when it is based on a properly phrased

hypothetical question.  *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005).

To be properly phrased, the hypothetical question posed to a VE must include all

physical and mental impairments the ALJ finds to be credible, *House v. Shalala*,

34 F.3d 691, 694 (8th Cir. 1994), even if the impairments are not disabling in and

of themselves.  *Grissom*, 416 F.3d at 837.

The testimony of the VE contributed to the record's support for the ALJ's

decision.  The ALJ posed a hypothetical to the VE based on his findings regarding

Middleton's age, education, work experience, and limitations.  The VE testified

that the person in the hypothetical would be able to perform jobs that existed in

significant numbers in the state's economy.  The ALJ reasonably relied on the

- 17 -

VE's testimony in determining that Middleton was not disabled.  *See* 20 C.F.R. §

404.1566(c).

The VE's testimony and the evidence in the medical records provided the

ALJ with substantial evidence for his determination that Middleton was not

disabled.  Middleton's unsupported allegations that the ALJ did not consider the

combined effect of his ailments and did not give his testimony its proper weight

are not sufficient to overcome the deference I am required to give the ALJ's

determination.

Accordingly,

**IT IS HEREBY ORDERED** the decision of the Commissioner denying

benefits is affirmed.  A separate judgment in accordance with this Memorandum

and Order is entered this same date**.**


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 19th day of September, 2011.